# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| REBECCA NOCERA, TRACY MICHEL, JENNIFER ROSSMAN, ANGELA RENEAU, FELICIA SAMMARCO, JOHN J. NOTTO, STEVEN WILLNER, and HEATHER SHARP, individually and on behalf of all others similarly situated, | Case No. 2:18-cv-01222 |

Plaintiffs,

v.

DOLLAR GENERAL CORPORATION
D/B/A DOLLAR GENERAL,
DOLGENCORP, LLC D/B/A DOLLAR
GENERAL, DOLGEN NEW YORK, LLC,
DG RETAIL, LLC, AND DOLGEN
CALIFORNIA, LLC,

Defendants.

---

## MEMORANDUM IN SUPPORT OF UNOPPOSED
## MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure ("Rule 23"), Plaintiffs Rebecca Nocera, Tracy Michel, Jennifer Rossman, Angela Reneau, Felicia Sammarco, John J. Notto, Steven Willner and Heather Sharp ("Plaintiffs") by and through their undersigned counsel, respectfully request final approval of the proposed Class Action Settlement embodied in the Settlement Agreement that this Court preliminarily approved in its Order dated January 27, 2021 ("Preliminary Approval Order") (ECF 78).[1] As set forth below, the relief achieved in this settlement meets all applicable requirements for final approval.

---

[1] The Settlement Agreement was attached as Exhibit 1 to the Amended Motion for Preliminary Approval of Class Action Settlement ("Preliminary Approval Motion") (ECF 76).

Pursuant to the Court's Preliminary Approval Order, on February 10, 2021 a copy of the Full Notice of Class Action Settlement was sent via electronic mail and/or U.S. Mail to the enumerated organizations listed in the Preliminary Approval Order.[2] The Full Notice of Certified Class Action Settlement was also published on a public website dedicated to the Class Settlement, at www.dollargeneralsettlement.com, and remains posted presently. *Id.* at ¶ 5.

The last day to file objections to the Settlement was March 29, 2021. No objections have been lodged against the Settlement by class members.[3] The lack of any objection is a strong endorsement of the quality of the relief achieved on behalf of the Class. Accordingly, on the record before the Court, the Settlement should be granted final approval.

## I.   BACKGROUND OF THE LITIGATION

On September 13, 2018, Plaintiff Rebecca Nocera initiated this action by way of class action complaint alleging that Dollar General violated Title III of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* (the "ADA"), and its implementing regulations based on Defendants' placement of non-fixed objects in locations at their stores that reduce or eliminate accessible routes of travel for people with mobility disabilities (the "Pennsylvania Lawsuit"). (ECF 1). On June 25, 2019, with consent of the parties, Judge Phipps (the judge previously presiding over the WDPA actions) consolidated the class action captioned *Michel* v. *Dollar Gen. Corp., et. al.*, No. 2:18-cv-1624, with the Nocera action, and a Consolidated Amended Complaint was filed. (ECFs 29 and 31). On May 15, 2018, Plaintiff Jennifer Rossman, by and through her counsel Disability Rights New York ("DRNY"), initiated a class action lawsuit in the United States District Court for the Northern District of New York, civil action number 6:18-cv-00573 (the "New York

---

[2] Carlson Declaration at ¶ 4.
[3] *Id.* at ¶ 8.

Lawsuit"), alleging substantially similar claims against Defendants as in this action. Additionally, Plaintiffs Angela Reneau (citizen of Illinois), Felicia Sammarco (citizen of Illinois), John J. Notto (citizen of Illinois), Steven Willner (citizen of Florida), and Heather Sharp (citizen of California) all retained Carlson Lynch for substantially similar allegations of access barriers limiting or narrowing the accessible routes of Defendants' stores in their respective states for people with mobility disabilities. Dollar General denies these allegations in their entirety.

Both Carlson Lynch and DRNY engaged in extensive investigation and research before filing their clients' respective suits. After the Pennsylvania Lawsuit and New York Lawsuit were filed, the parties engaged in motions practice, discovery, and each engaged in mediation. The parties in the Pennsylvania Lawsuit mediated with Carole Katz on July 30, 2019. While the July 30, 2019 mediation in the Pennsylvania Lawsuit was unsuccessful, the parties to that action agreed to continue working towards a resolution of the action. The parties in the New York Lawsuit mediated with David Homer on September 17, 2019. Thereafter, the parties to the Pennsylvania Lawsuit and New York Lawsuit, along with Dollar General, began negotiation of a global resolution for those two actions, along with the (then) unfiled claims of Plaintiffs Reneau, Sammarco, Notto, Willner, and Sharp. On February 18, 2020, all parties engaged in another in-person mediation with Carole Katz, involving both Carlson Lynch's and DRNY's clients' claims, to discuss a global, nationwide class resolution.

After extended negotiations that ultimately occurred throughout the course of over a year, and facilitated by Carole Katz – who remained actively involved in the continued negotiations after the February 2020 global mediation – the parties reached an agreement in principle on or about June 11, 2020 for a class resolution of all Plaintiffs' claims related to mobility accessibility barriers as a result of the placement of non-fixed items that limit or narrow paths of travel within

or to Defendants' stores. The parties agreed to stay Plaintiff Rossman's New York Lawsuit, and that Plaintiff Rossman, along with Plaintiffs Reneau, Sammarco, Notto, Willner, and Sharp would file their claims in this Court in a Consolidated Second Amended Complaint ("SAC") for purposes of this nationwide class settlement. Plaintiffs' SAC was filed on July 20, 2020. (ECF 56).[4]

Plaintiffs allege in the SAC that each Plaintiff has a mobility disability under the ADA, and each Plaintiff uses a wheelchair for mobility assistance. (SAC ¶¶ 31-38). Plaintiffs further allege that they are regular customers of Defendants' stores and have experienced access barriers in the form of merchandise, merchandise displays, carts, boxes, dollies, and other non-fixed items placed in accessible routes of Defendants' stores in manner that has limited Plaintiffs' ability to navigate through pathways of travel while using their wheelchairs. (SAC ¶¶ 45-84). The SAC alleges violations of the ADA, and seeks injunctive relief, along with attorneys' fees and costs. (SAC, p. 28).

## II.     THE TERMS OF THE SETTLEMENT

The Settlement Agreement is intended to affect a complete resolution and settlement of all claims and controversies relating to the assertions of Plaintiffs and the Class.[5] In exchange for a release of claims by Plaintiffs and the Class, Dollar General will agree to provide the injunctive relief as described, *infra*.

### A.  **Injunctive Relief for the Benefit of the Class**

The parties have agreed to the following injunctive relief:

---

[4] The parties have also agreed to stay/extend Defendants' time to answer or otherwise respond to the SAC in order to allow the Court to review and rule on the proposed class settlement herein before answering. Further, the parties agree that Defendants have not waived any defenses by Defendants' agreement to the filing of the SAC for purposes of this proposed settlement.

[5] As with any class settlement, Defendants do not waive their right to oppose any of the required elements of Rule 23 Class Certification or oppose any factual or legal liability arguments contained herein should litigation ensue.

1.  <u>ADA Access Compliance</u>

Defendants agree to ensure that the placement of merchandise, shopping carts, boxes, and/or other non-fixed items in areas of the stores, both inside and out, will not reduce or eliminate accessibility to any of the following paths of travel: parking in designated accessible parking spaces and adjoining access aisles; the entrances or exits of the stores; accessible routes within the stores (*i.e.*, aisles or pathways to merchandise on the sales floor); access routes to publicly available restroom facilities; the route to or ability to use the publicly available fountains; and paths to any emergency exits and/or fire escape doors (collectively, the "Access Routes"). Defendants further agree that, if Access Routes are obstructed, they will follow the protocols set forth herein to promptly remedy the issue.

2.  <u>ADA Customer Service Assistance</u>

Defendants will include a toll-free customer assistance line phone number on a customer-facing door poster or sign that includes the universal persons with disabilities symbol with language to the effect of, "We are committed to compliance with the Americans with Disabilities Act. Our employees are glad to help! If you need assistance, please ask a Dollar General associate or call 1-877-463-1553." Defendants will instruct its Customer Service intake representatives that all ADA accessibility issues reported through the Customer Service line must be maintained and promptly forwarded in writing, to Defendants' applicable District Managers for prompt investigation and, if necessary, prompt remediation.

3.  <u>Training on Accessibility Plan</u>

Defendants will ensure that all Regional Directors, District Managers, and Store Managers hired prior to the Effective Date of the Settlement Agreement complete a computer-based ADA Title III training that encompasses the full scope of the injunctive relief detailed herein, the content

of which may be reviewed by Class Counsel prior to finalization. Defendants shall consider Class Counsel's recommendations regarding such changes but is not required to make any substantive changes based on Class Counsel's review. For all Regional Directors, District Managers, and Store Managers hired after the Effective Date of the Settlement Agreement, completion of the computer-based Title III ADA Compliance Training will be part of the onboarding process.

Dollar General agrees that all hourly employees hired prior to the Effective Date of the Settlement Agreement at Defendants' stores will receive training through a one-page ADA Title III Compliance educational document regarding the requirements of the injunctive relief detailed herein, the content of which may be reviewed by Class Counsel prior to finalization. Defendants shall consider Class Counsel's recommendations regarding such changes but are not required to make any substantive changes based on Class Counsel's review. For all employees encompassed by this provision that are hired after the Effective Date of the Settlement Agreement, the one-page ADA Compliance document will be made part of their onboarding materials.

B. **Monitoring Provisions**

The Settlement Agreement contains monitoring and reporting provisions to ensure that Dollar General meets its obligations. Dollar General will ensure that the District Managers monitor the stores' compliance with this agreement by including an inspection for any Access Barriers in any Access Routes during each District Manager Quarterly Store Compliance Visit. Should the District Manager determine that there are any Access Barriers in any Access Routes, the District Manager will work with the Store Manager to remedy the specific issue immediately if possible, but no later than within twenty-four (24) hours. If for an unforeseen reason the District Manager and the Store Manager cannot work to remedy the issues within twenty-four (24) hours, Dollar General will advise Class Counsel of the additional need for time to cure.

No later than March 31st for each year during the Term of the Settlement Agreement, Dollar General shall provide Class Counsel with a summary report compiling the District Manager Quarterly Store Compliance Visit Reports performed during the year that shows the itemized total for all ADA access results in the following or similar form: (a) All Clear or (b) Appropriate Corrective Action Taken ("Annual Summary Report"). In the event that an Access Barrier is identified and Appropriate Corrective Action is taken, the Annual Summary shall include a brief description of the identified Access Barriers. The Annual Summary Report shall include an update as to any changes to the districts (*i.e.*, new stores, closed stores, changed district boundary lines, etc.) for purposes of monitoring the compliance under this agreement.

Beginning on the ninety-first (91st) day after the Effective Date, Class Counsel or their agents may monitor Defendants' compliance with the Settlement Agreement through inspections of Defendants' stores, which monitoring may be performed without advance notice to Defendants. The Parties agree to the following with respect to the monitoring:

- Class Counsel or their agent may inspect up to three percent (3%) of all Defendants' stores (for a total of 480 stores) during the Term of the Settlement Agreement.

- During the Term of the Settlement Agreement, Class Counsel may perform up to one (1) inspection and one (1) follow-up inspection per specific Store location. However, if Access Barriers are identified in any Access Route upon follow-up inspection of a specific Store location, the aforementioned restriction on the number of inspections permitted by Class Counsel at that specific Store location is removed.

- Class Counsel will inspect no more than eight (8) stores in a single district in a calendar month. To facilitate this agreement, within ninety (90) days after the Effective Date,

Defendants will provide Class Counsel with a listing of all stores with their addresses, and their respective districts.

## III.    CERTIFICATION OF A SETTLEMENT CLASS IS APPROPRIATE AND WARRANTED

The benefits of the proposed Settlement can be realized only through the certification of a settlement class. The Supreme Court of the United States has confirmed not only the viability, but the desirability, of such settlement classes. *See Amchem Prods. v. Windsor*, 521 U.S. 591 (1997). So too have the federal courts of appeal. *See, e.g.*, *In re Prudential Insurance Co. of America Sales Practices Litig.*, 148 F.3d 283 at 316 (3d Cir. 1998) ("*Prudential II*"); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998).

The decision of whether to approve a proposed settlement of a class action is left to the sound discretion of the district court. *Girsh v. Jepson*, 521 F.2d 153, 156 (3d Cir. 1975). When reviewing settlement-only class certification, the district court does not need to inquire into manageability issues, because there would be no trial; however, the court should be satisfied that the other elements of Rule 23 – "those designed to protect absentees by blocking unwarranted or overbroad class definitions" – are satisfied. *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 257 (3d Cir. 2009). The district court must also determine that the settlement is fair to the class under Rule 23(e). *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 319 (3d Cir. 2011). As further explained below, Plaintiffs have satisfied all prerequisites of Fed. R. Civ. P. 23 for purposes of certification of the settlement class, and the settlement is fair.

### A.    The Rule 23(a) Prerequisites Are Satisfied

The four prerequisites of Rule 23(a) are that:

(1)    the class be so numerous that joinder of all members is impracticable;

(2)    there be questions of law or fact common to the class;

(3)     the claims or defenses of the representative parties by typical of the claims or defenses of the class; and

(4)     the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); *Weiss v. York Hosp.*, 745 F.2d 786, 807 (3d Cir. 1983); *Wetzel v. Liberty Mutual Ins. Co.*, 508 F.2d 239, 246 & n.7 (3d Cir.), *cert. denied*, 421 U.S. 1011 (1975).

## 1.  Numerosity

As a prerequisite to certification, the Court must determine that the proposed class "is so numerous that joinder of all members is impracticable." *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 182 (3d Cir. 2001); Fed. R. Civ. P. 23(a)(1). Impracticality does not mean impossibility; it means that class certification is proper in light of the difficulty of joining all members of the putative class. *Cureton v. Nat'l Collegiate Athletic Assn.*, 1999 WL 447313, *5 (E.D. Pa. July 1, 1999). The inquiry is focused on judicial economy. *See Phila. Elec. Co. v. Anaconda Amer. Brass Co.*, 43 F.R.D. 452, 463 (E.D. Pa. 1968). While there is no precise standard in the Rule itself, the Third Circuit has ruled that a class of more than 40 people presumptively satisfies the requirement that class treatment is appropriate. *See Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001); *see also* H. Newberg & A. Conte, *Newberg on Class Actions*, § 3.05, at 3-25 (1992). Both general knowledge and common sense assumptions may be applied to the numerosity determination. *Snider v. Upjohn Co.*, 115 F.R.D. 536, 539 (E.D. Pa. 1987).

Here, Rule 23(b)(2) provides for an injunctive-only class, and, while not exclusively intended to remedy civil rights violations, the section is well-suited for such actions. As a Supplementary Notes to Rule 23(b)(2) explains:

> This subdivision is intended to reach situations where a party has taken action or refused to take action with respect to a class, and final relief of an injunctive nature or of a corresponding declaratory nature, settling the legality of the behavior with respect to the class as a whole, is appropriate. Declaratory relief "corresponds" to injunctive relief when as a practical matter it affords injunctive relief or serves as a

basis for later injunctive relief. The subdivision does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages. Action or inaction is directed to a class within the meaning of this subdivision even if it has taken effect or is threatened only as to one or a few members of the class, provided it is based on grounds which have general application to the class.

Fed. R. Civ. P. 23.

Solely for purposes of this Class Action Settlement, Defendants will not challenge that numerosity is satisfied and that the class exceeds 40 individuals. A finding that the numerosity requirement is satisfied is further compelled by common sense and available data regarding the number of mobility impaired individuals in the United States. Census data shows that roughly 30.6 million people have difficulty walking or climbing stairs, or used a wheelchair, cane, crutches, or walker; about 3.6 million of those people use a wheelchair. *See* U.S. Access Board, Regulatory Analysis.[6] Defendants own and operate in excess of 16,200 stores throughout the United States. In light of the number of individuals with mobility disabilities in the United States, and the sheer number of Defendants' stores, the proposed Class would easily surpass 40 individuals and joinder is impracticable. *See Arnold v. United Artists Theatre Circuit, Inc.*, 158 F.R.D. 439, 448 (N.D. Cal. 1994) (extrapolating from evidence that there are over 175,000 wheelchair users in California that the number of persons affected by the public accommodation violations at defendant's 70 theatres was in the thousands).

### 2. Commonality

Plaintiffs assert, and Defendants do not object for settlement purposes only, that the proposed Class also meets the commonality requirements of Rule 23(a)(2), which requires that

---

[6] Available at: https://www.access-board.gov/guidelines-and-standards/recreation-facilities/outdoor-developed-areas/final-guidelines-for-outdoor-develop ed-areas/regulatory-analyses (*citing* Americans with Disabilities: 2010, available at: http://www.census.gov/prod/2012pubs/p70-131.pdf).

"there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). At least in cases seeking injunctive relief, "[t]he commonality requirements will be satisfied if the named Plaintiffs share at least one question of fact or law with the grievances of the prospective class … Because the requirement may be satisfied by a single common issue, it is easily met." *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994). Further, "because they do not also involve an individualized inquiry for the determination of damage awards, injunctive actions by their very nature often present common questions satisfying Rule 23(a)(2)." *Id.* at 57 (citations omitted).

Although Defendants' deny Plaintiffs' allegations and any contention that Dollar General has violated Title III of the ADA or that the claims at issue are certifiable, for purposes of settlement only Defendants will not challenge there are factual and legal issues common to Plaintiffs and Class Members, including whether they have been, are being, and/or will be denied full and equal access to, and use and enjoyment of, Defendants' goods and services due to Defendants' failure to make those services accessible and useable by people who use wheelchairs or scooters for mobility. Accordingly, Plaintiffs submit that Rule 23(a)(2) is satisfied in this case. *Id.* at 62 (finding the class action clearly presented common factual and legal issues under the applicable standard).

### 3. Typicality

For purposes of settlement only, Defendants will not challenge that Plaintiffs have also satisfied Rule 23(a)(3)'s typicality requirement, which "entails an inquiry [into] whether the named Plaintiff's individual circumstances are markedly different or… the legal theory upon which the claims are based differs from that upon which the claims of the other class members will perforce be based." *Id.*at 57-58 (citations omitted). Claims which challenge the conduct of defendant that affects the Named Plaintiff and Class Members, such as the claims in this case, "usually satisfy

the typicality requirement irrespective of the varying fact patterns underlying the individual claims…Actions requesting declaratory and injunctive relief to remedy the conduct directed at the class clearly fit this mold." *Id.* at 58.

Here, Plaintiffs' claims are typical of those of Class Members since they arise from the same practices as those that give rise to the claims of the class and are based on the same legal theories. *See id.*; *see also Stewart v. Abraham*, 275 F.3d 220, 228 (3d Cir. 2001). Plaintiffs' claims for declaratory and injunctive relief to remedy Defendants' violations of the ADA are typical of the claims of putative Class Members. They are "framed as a violative practice" embracing injuries linked to this practice, and they "occupy the same position of centrality for all class members." *Baby Neal*, 43 F.3d at 63. Therefore, the typicality requirement of Rule 23(a)(3) is satisfied.

### 4. Adequacy of Representation

A putative class representative must also demonstrate that he or she will "fairly and adequately protect the interests of the class." Fed R. Civ. P. 23(a)(4). This requirement is satisfied where the named Plaintiffs' interests in the matter are not antagonistic to the interests of the prospective Class Members, and counsel for the Named Plaintiffs are experienced and qualified to conduct the litigation. *Baby Neal*, 43 F.3d at 55.

Here, Plaintiffs will fairly and adequately protect the interests of the members of the Class. Plaintiffs have no adverse or antagonistic interests to those of the Class. To the contrary, Plaintiffs and Class Members share the same injuries and seek the same relief – access to unobstructed Accessible Routes located at Defendants' stores. *See Metts v. Houstoun*, 1997 WL 688804, *4 (E.D. Pa. 1997) (quoting *Hassine v. Jeffes*, 846 F.2d 169, 179 (3d Cir. 1988)) ("Because the plaintiff seeks the same injunctive relief as all members of the class, the court 'can find no potential for conflict between the claims of the complainants and those of the class as a whole.'").

Additionally, Plaintiffs' counsel has provided fair and vigorous representation for the Class. Plaintiffs' counsel has substantial experience in similar litigation and has regularly been deemed to be adequate class counsel.

### B.     The Requirements Of Rule 23(b) Are Satisfied

Fed. R. Civ. P. 23(b) provides in pertinent part:

(b)     **Class Action Maintainable.**  An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied and, in addition:

*****

(2)     the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole

Because the nature of relief sought in a Rule 23(b)(2) class action is cohesive in nature, an adequate class representative can, as a matter of due process, bind all absent class members by a judgment. *Walsh v. Great Atl. & Pac. Tea Co.*, 726 F.2d 956, 963 (3d Cir. 1983).

Here, the injunctive relief is sought to benefit, and clearly will benefit, the entire class that Plaintiffs seek to represent. Consequently, for settlement purposes only, certification under Rule 23(b)(2) is appropriate. *See Flynn v. Concord Hospitality Enterprises Co.*, No. 2:17-cv-1618-LPL, ECF 41 (W.D. Pa. Nov. 27, 2018) (granting motion for final approval of class action settlement for class of mobility disabled individuals challenging hotel transportation ADA access barriers); *Kerrigan v. Phila. Bd. Of Educ.*, 248 F.R.D. 470 (E.D. Pa. 2008) (certifying class of mobility disabled individuals challenging ADA access barriers); *see also Hernandez v. AutoZone, Inc.*, No. 15-cv-5593, ECF 46 (E.D. N.Y. Feb. 27, 2018) (similar); *see also Jahoda v. Redbox Automated Retail, LLC*, No. 14-cv-01278-LPL, ECF 67 (W.D. Pa. March 30, 2017) (granting preliminary approval of settlement and certifying injunctive class).

## IV. THE PROPOSED SETTLEMENT EXCEEDS THE STANDARDS FOR JUDICIAL APPROVAL

### A. Final Approval Of The Settlement Is Within The Sound Discretion Of The Court And Is Favored By Strong Judicial Policy

A class action cannot be settled without court approval based on a determination that the proposed settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2). The inquiry into the settlement's fairness under Rule 23(e) "protects unnamed class members from unjust or unfair settlements affecting their rights when the representatives become fainthearted before the action is adjudicated or are able to secure satisfaction of their individual claims by a compromise." *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 436 (3d Cir.), *as amended* (May 2, 2016), *cert. denied sub nom. Gilchrist v. Nat'l Football League*, 137 S. Ct. 591, 196 L. Ed. 2d 473 (2016), and *cert. denied sub nom. Armstrong v. Nat'l Football League*, 137 S. Ct. 607, 196 L. Ed. 2d 473 (2016).

While the approval of a proposed class action settlement is a matter within the sound discretion of the Court, *see Girsh*, 521 F.2d at 156; *Weiss v. Mercedes-Benz of N. America, Inc.*, 899 F. Supp. 1297, 1300 (D.N.J.), *aff'd without op.*, 66 F.3d 314 (3d Cir. 1995), a strong judicial policy favors resolution of litigation short of trial. *See Jackson v. Wells Fargo Bank, N.A.*, 136 F. Supp. 3d 687, 700 (W.D. Pa. 2015) ("There is an overriding public interest in settling class action litigation"); *In re General Motors Pick-Up Truck Fuel Tank Prod. Liability Litigation*, 55 F.3d 768, 805 (3d Cir. 1996), *cert. denied*, 516 U.S. 824 (1995) ("*GM Trucks*") ("The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation"). Class settlement "is to be encouraged by the courts, particularly in complex settings that will consume substantial judicial resources and have the potential to linger for years." *Jackson*, 136 F. Supp. 3d at 700; *Bell Atlantic Corp. v.*

*Bolger*, 2 F.3d 1304, 1314 n.16 (3d Cir. 1993). A federal district court within the Third Circuit

has articulated the rationale for this policy as follows:

> [W]hen parties negotiate a settlement they have far greater control of their destiny
> than when a matter is submitted to a jury. Moreover, the time and expense that
> precedes the taking of such a risk can be staggering. This is especially true in
> complex commercial litigation.

*Weiss*, 899 F. Supp. at 1300-01.

The proposed settlement in this case enjoys a presumption of fairness because it is the

product of arm's-length negotiations conducted by experienced counsel who are fully familiar with

all aspects of class action litigation. *In re NFL Players Litig.*, 821 F.3d at 436 ("We apply an initial

presumption of fairness … when … (1) the negotiations occurred at arm's length; (2) there was

sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and

(4) only a small fraction of the class objected"); *see also* Alba Conte & Herbert Newberg, *Newberg*

*on Class Actions* § 11.41 (2011); *Manual for Complex Litigation* (Fourth)

§ 21.64 (2004).

Here, Class Counsel are fully familiar with the facts and law applicable to this litigation

and are well acquainted with the prosecution of class actions, generally, and with class-based Title

III claims, in particular. Furthermore, before entering into the Settlement, Class Counsel took into

account, among other things, the nine factors that the Court of Appeals for the Third Circuit has

identified as being relevant to the determination of whether a class settlement is fair, reasonable

and adequate. *See Girsh*, 521 F.2d at 156. The evaluation of those factors resulted in Class

Counsel's recommendation that the proposed settlement be accepted as fair, reasonable, and

adequate as is set forth below.

### B. The *Girsh* Factors Support The Settlement

The Court of Appeals for the Third Circuit has adopted a set of nine factors to be considered in determining whether a proposed settlement is fair, reasonable, and adequate: (1) the complexity and duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining a class action; (7) the ability of the defendant to withstand a greater judgment; (8) the range of reasonableness of the settlement in light of the best recovery; and (9) the range of reasonableness of the settlement in light of all the attendant risks of the litigation. *Girsh*, 521 F.2d at 157; *In re NFL Players Litig.*, 821 F.3d at 437.

The following application of these factors to the proposed Settlement demonstrates that it is fair, reasonable, and adequate and should be approved.

### 1. Continued litigation would be long, complex, and expensive

The first *Girsh* factor "captures the probable costs, in both time and money, of continued litigation." *In re NFL Players Litig.*, 821 F.3d at 437. This litigation has already been costly, in both time and money, and would, no doubt, continue to be. Initially, at the direction of Class Counsel, Plaintiffs' investigators conducted extensive investigations at Defendants' stores which generated findings in support of Plaintiffs' claims. Defendants disputed these findings and would have continued to do so had the parties not reached a settlement. Moreover, the parties have engaged in extensive legal research and analysis, conducted discovery, and engaged in substantial negotiations to reach the proposed Settlement, including extensive negotiations with a mediator.

Should this litigation continue, Plaintiffs would presumably file a Motion for Partial Summary Judgment on the issue of liability. Additionally, the Parties would presumably engage in intense pretrial motions practice and will have to endure the substantial amount of time and

money that would be expended on a trial and any subsequent appeals. The Settlement, on the other hand, permits a resolution of the claims at issue, in a manner that is fair, reasonable, and adequate to the Class, while at the same time serves the Congressional purposes of affording persons with disabilities "full and equal enjoyment of the goods, services, privileges, advantages, or accommodations of any place of public accommodation". 42 U.S.C. § 12182(a). Standing alone, resolution of the claims in dispute benefits the Class and members of the mobility-disabled community.

### 2. The reaction of the class to the settlement has been favorable

The second *Girsh* factor "attempts to gauge whether members of the class support the settlement." *In re NFL Players Litig.*, 821 F.3d at 438 (quoting *Warfarin*, 391 F.3d at 536). Courts reviewing this factor observe the percentage of objectors and opt-outs. *Id.* For example, the Third Circuit has found objection and opt-out rates of 1%, respectively, weighed in favor of settlement. *Id.* "The reaction of the class is perhaps the most significant factor to be weighed in considering its [the settlement's] adequacy." *O'Keefe v. Mercedes-Benz USA, LLC*, 214 F.R.D. 266, 294 (E.D. Pa. 2003). Here, after adequate notice consistent with the Court's directive in the Preliminary Approval Order, there have been no objections to the Settlement. This fact strongly recommends final approval of the Settlement. *See In re Linerboard Antitrust Litig.*, 321 F. Supp. 2d 619, 629 (E.D. Pa. 2004) (Unanimous approval "strongly militates a finding that the settlement is fair and reasonable.").

### 3. Plaintiffs are able to make an informed evaluation of the merits of the proposed settlement

The stage of the proceedings and the amount of investigation and/or discovery completed is another factor considered in determining the fairness, reasonableness, and adequacy of the settlement. *GM Trucks*, 55 F.3d at 785. This factor "captures the degree of case development that

class counsel have accomplished prior to the settlement. Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re NFL Players Litig.*, 821 F.3d at 438.

Here, following a preliminary investigation by Plaintiffs' investigators, significant legal and factual research, and substantial negotiations between the parties, Plaintiffs and Class Counsel possessed sufficient information to make an appropriate and informed evaluation of the proposed Settlement. Plaintiffs and Class Counsel possessed sufficient information to conclude that not only is the proposed Settlement fair, reasonable, and adequate, but it also serves the Congressional purposes reflected in the ADA. This factor weighs heavily in favor of approval of the proposed Settlement.

### 4.  Plaintiffs faced considerable risk in establishing liability

In assessing the fairness, reasonableness, and adequacy of the Settlement, the Court should balance the risks of establishing liability against the benefits afforded by the Settlement, and the immediacy and certainty of an adequate recovery against the risks of continuing litigation. *Girsh*, 521 F.2d at 157. In doing so, the Court "need not delve into the intricacies of the merits of each side's arguments, but rather may 'give credence to the estimation of the probability of success proffered by class counsel, and the possible defenses which may be raised to their causes of action.'" *Perry v. FleetBoston Fin. Corp.*, 229 F.R.D. 105, 115 (E.D. Pa. 2005) (quoting *Lachance v. Harrington*, 965 F. Supp. 630, 638 (E.D. Pa. 1997)); *see also Vasco v. Power Home Remodeling Grp. LLC*, No. CV 15-4623, 2016 WL 5930876, at *6 (E.D. Pa. Oct. 12, 2016).

Here, given the nature of the issues involved, particularly with respect to the adequacy of Defendants' company-wide ADA policies and practices, Plaintiffs face considerable risk in

establishing liability.  As another court has noted, "no matter how confident one may be of the outcome of litigation, such confidence is often misplaced."  *State of West Virginia v. Chas. Pfizer & Co.*, 314 F.Supp. 710, 743-44 (S.D.N.Y. 1970), *aff'd,* 440 F.2d 1079 (2d Cir.), *cert. denied*, 404 U.S. 871 (1971).  In the context of this litigation, the risks that Plaintiffs face in establishing liability are manifest, and this factor thus favors approval of the proposed Settlement.

### 5.        Plaintiffs face no risk in establishing sustainable damage award

Because Plaintiffs are only seeking injunctive relief and no damages are applicable here, Plaintiffs submit this factor is neutral.

### 6.        The risks of maintaining a certified class through trial

Although under Rule 23 a class may be decertified at any time during the litigation, with respect to the sixth *Girsh* factor, the Third Circuit has held that in assessing the risks of maintaining a certified class through trial, "a district court need not inquire whether the case, if tried, would present intractable management problems[,]" where the settlement proposes, on its face, "'that there be no trial.'"  *In re NFL Players Litig.*, 821 F.3d at 440 (citations omitted).  Which, in effect, means the sixth *Girsh* factor "becomes essentially 'toothless,'" and "deserve[s] only minimal consideration."  *Id.*  Here, the proposed Settlement forecloses trial, and, thus, this factor weighs in favor of settlement.

### 7.        Defendants' ability to withstand a greater judgment

This factor considers "whether the defendants could withstand a judgment for an amount significantly greater than the [s]ettlement."  *Warfarin*, 391 F.3d at 537–38.  This "factor is most relevant when the defendant's professed inability to pay is used to justify the amount of the settlement."  *In re NFL Players Litig.*, 821 F.3d at 440.  While Defendants have not professed an inability to pay, and, while the proposed Settlement does not provide for damages, Plaintiffs submit

that the comprehensive injunctive relief provided to the Class under the terms of the proposed Settlement is costly to Defendants. The proposed Settlement results in injunctive relief that will ensure that Plaintiffs and the Class are afforded equal access to Defendants' goods and services at stores throughout the country. Defendants will be obligated to provide such equal access at their own expense, and this factor weighs in favor of settlement.

> **8.** **Reasonableness of the settlement in light of the best possible recovery and all attendant risks of litigation**

The last two *Girsh* factors are the reasonableness of the settlement in light of (i) the best recovery, and (ii) all the attendant risks of the litigation. The Court asks "whether the settlement represents a good value for a weak case or a poor value for a strong case… The factors test two sides of the same coin: reasonableness in light of the best possible recovery and reasonableness in light of the risks the parties would face if the case went to trial." *In re NFL Players Litig.*, 821 F.3d at 440 (citing *Warfarin*, 391 F.3d at 538).

Here, the settlement relief reflects the best possible outcome for members of the Class and also provides them with all the injunctive relief that they are afforded under the ADA: equal access to goods and services in Defendants' stores throughout the country and monitoring to ensure that Defendants are, in fact, providing accessible goods and services. As set forth above, continued litigation would be protracted and costly, causing the Class to wait years before being afford the same relief, if at all. Given the reasonableness of the settlement and the attendant risks of continued litigation, the eighth and ninth *Girsh* factors weigh in favor of approval of the proposed Settlement.

## V. <u>CONCLUSION</u>

Plaintiffs respectfully submit that the proposed Settlement is fair, reasonable, and adequate and represents a responsible and appropriate compromise of this litigation. For all of the foregoing

reasons, Plaintiffs respectfully request that the Court enter the Proposed Final Approval Order and

Proposed Final Judgment (Exhibit 2 to Motion), approving the proposed Settlement.


Dated:  May 12, 2021                              Respectfully Submitted,

                                                  */s/ R. Bruce Carlson*
                                                  R. Bruce Carlson
                                                  Kelly K. Iverson
                                                  **CARLSON LYNCH, LLP**
                                                  1133 Penn Avenue, 5th Floor
                                                  Pittsburgh, PA 15222
                                                  Tel: 412-322-9243

                                                  Christina Asbee
                                                  Amanda Pearlstein
                                                  *(Both admitted pro hac vice*)
                                                  **DISABILITY RIGHTS NEW YORK**
                                                  725 Broadway Ste. 450
                                                  Albany, NY 12207
                                                  (518) 432-7861 (telephone)

                                                  *Co-Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that, on May 12, 2021, a true and correct copy of MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT was served upon all counsel of record via the Court's electronic filing system.

*/s/ R. Bruce Carlson*